IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMIR FATIR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 76-364-GMS |
| | ) |
| WALTER REDMAN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

On September 22, 2014, the plaintiff Amir Fatir ("Fatir"), an inmate at the James T. Vaughn Correctional Center ("VCC") filed a motion to enforce the judgment. (D.I. 152.)

## I. BACKGROUND

On October 29, 1976, convicted State inmates and pre-trial detainees held at the Delaware Correctional Center ("DCC") (now known as the James T. Vaughn Correctional Center) in Smyrna, Delaware, filed a lawsuit seeking injunctive relief to alleviate the overcrowded living conditions at the DCC. In the complaint, the plaintiffs invoked the Eighth and Fourteenth Amendments, 42 U.S.C. § 1983, and several State laws governing corrections. (D.I. 124); *See Anderson v. Redman*, 474 F. Supp. 511, 513 (D. Del. 1979). The defendants were sued only in their official capacities. *See Anderson v. Redman*, 429 F. Supp. 1105 (D. Del. 1977) ("*Anderson I*"). The matter proceeds as a class action.

On December 6, 1976, the court found that conditions in the receiving room cells could not pass constitutional muster and constituted cruel and unusual punishment under the Eighth Amendment of the Federal Constitution as incorporated in the Fourteenth Amendment of the Federal Constitution, and that the conditions worked a denial of due process under the

Fourteenth Amendment as to individuals charged, but not convicted of any criminal offense. . . ." (D.I. 20.); *see also Anderson v. Redman*, 474 F. Supp. at 513 n.2; *Anderson I*, 429 F. Supp. at 1121. It granted immediate relief to alleviate overcrowding in the receiving room cells at the DCC. *Id.* On February 16, 1977, the court entered a final order that granted the plaintiffs permanent injunctive relief. (D.I. 41, 42.) The court expressly recognized the existence of a substantial federal constitutional question, exercised pendent jurisdiction over the plaintiffs' state-law claims and granted relief, solely on the basis of those state-law violations, with one exception (the receiving room cells as discussed in the December 6, 1976 order). *See Anderson*, 474 F. Supp. at 513. The order was modified on May 17, 1978 (D.I. 84) and September 22, 1978 (D.I. 102). The September 22, 1978 order amended the February 16, 1977 order as follows: "Notwithstanding any provision of this Order prohibiting double celling or requiring single cells, defendants are permitted to house two inmates in cells . . . in the 120 bed facility currently being constructed at the [DCC]." (D.I. 102.) The February 16, 1977 order, as amended, required that the defendants limit the inmate population of the DCC to the design capacity of that institution. *See Anderson v. Redman*, 480 F. Supp. 830, 831 (D. Del. 1979) ("*Anderson II*").

In the meantime, on March 17, 1977, the court entered an order denying the defendants' application for a partial stay. (D.I .53.) The order noted that the defendants had conceded they were in violation of Delaware statutes. (*Id.*) In an apparent response to the order, on June 8, 1979, the Governor of Delaware signed into law House Bill 495 ("H.B. 495") (codified at 11 Del. C. § 6502). *See* http://delcode.delaware.gov/sessionlaws/ga130/chp061.shtml (Jan. 29, 2015). The law expressly referred to this court's March 1977 order and was designed to prevent the court from enforcing limits on the inmate population in the State of Delaware based upon violations of Delaware statutory law. *See Anderson II*, 480 F. Supp. at 831.

2

Following the enactment of H.B. 495, the defendants moved to vacate the modified February 17, 1977 order, on the grounds that H.B. 495 had undercut the basis of that order. (D.I. 123.) The plaintiffs, on the other hand, sought to challenge the constitutionality of H.B. 495 under the Delaware Constitution, and sought a stay of the court's order pending resolution of a State court action to challenge the constitutionality of H.B. 495. *See id.* On November 28, 1979, the court denied the motion to vacate. As noted by the court, the order at issue was based solely on the finding that the conditions of confinement at DCC violated State statutory law and, although the conditions were also challenged on state and federal constitutional grounds, the court found it unnecessary to reach these issues. *See id.* The court ordered the plaintiffs to litigate all bases for their Delaware State constitutional challenge to H.B. 495 in the Delaware courts and stayed the February 17, 1977 order, as amended, until 90 days after the ultimate resolution of the State court action. (D.I. 141, 142); *see Anderson II*, 480 F. Supp. at 833.

In accordance with the order to litigate in State court, a class action was filed in the Court of Chancery of Delaware, New Castle County, in March 1980, *Dickerson v. DuPont*, Civ. A. No. 10256 (Del. Ch.).[1] (*See* D.I. 150, ex.) The original complaint alleged that conditions of overcrowding at the DCC were violative of article I, § 11 of the Delaware Constitution of 1987. *See Dickerson v. Castle*, 1991 WL 208467 (Del. Ch. 1991) ("*Dickerson I*"). The parties reach a settlement agreement and the Court of Chancery entered an order approving the agreement on November 28, 1988. *See Dickerson v. Carper*, 1995 WL 606316, at *1 (Del. Ch. 1995) ("*Dickerson II*"). The agreement went far afield from the original complaint, covering conditions at all four major prison operated by the Delaware Department of Correction ("DOC").

---

[1] It appears that through the years the defendant Delaware Governor was substituted with each newly elected governor until the action was finally dismissed in 1995. *See Dickerson v. Carper*, 1995 WL 606316 (Del. Ch. Ct. Sept. 7, 1995).

3

*Dickerson II* at 1. The agreement contemplated implementation of its provisions over three years ending in 1991. *Dickerson II* at *1. Approximately one year after entry of the order approving the settlement between the parties, the plaintiffs filed a motion to show cause why the defendants should not be held in contempt for alleged violations of the agreement. *See Dickerson I*. When the Chancery Court heard the motion, it found that the defendants were in compliance with the agreement. *See Dickerson II* at *1. The *Dickerson* class action was dismissed on September 7, 1995 with each party to bear its own coasts. *Id.* at *6.

During the pendency of *Dickerson*, a motion to lift the stay was filed in the instant action in 1983 on behalf of one inmate who was a member of the original class certified. By this time, "there were unresolved questions as to both representation and tactics with respect to the plaintiffs' class."[2] (D.I. 150.) On April 23, 1984, the court entered an order and declined to lift the stay but noted that the denial was without prejudice to the BCRP or its prisoner clients to file a fresh lawsuit reflecting current conditions of alleged overcrowding in the Delaware correctional system. (*Id.*)

No further action in this case took place until September 22, 2014, when Fatir filed the instant motion to enforce judgment (D.I. 152), pursuant to Fed. R. Civ. P. 70 and 71 and the All Writs Act, 28 U.S.C. § 1651(a),[3] some thirty years after entry of the last order in this case. Fatir seeks an order for the defendants to cease double-celling, reduce the inmate capacity to the design capacity and reduce the classification capacity to 8% below design capacity to comply

---

[2] The record reflects that as of April 23, 1984 there remained "an unresolved question as to both representation and tactics with respect to plaintiff's class" given that as of that date: (1) one inmate was represented by attorneys from the Brandywine Civil Rights Project ("BCRP"), but no decision had been made whether its attorneys were willing to represent the entire class; (2) attorneys from Community Legal Aid Society, Inc. represented the remainder of the class (although 300 inmates has asked that it no longer represent them); and (3) the Committee on Individual Rights and Responsibilities of the Delaware State Bar Association declined involvement in the action. (D.I. 150.)

[3] Fatir refers to the All Writs Act found at 28 U.S.C. § 165(a). The correct cite is 28 U.S.C. § 1651(a).

4

with the court's definition of classification capacity. (*Id.*) The defendant Warden Pierce opposes the motion.[4]

## II. STANDARDS OF LAW

Fatir moves for enforcement pursuant to Fed. R. Civ. P. 70 and 71, as well as the All Writs Act, 28 U.S.C. § 1651(a). Rule 70 states in pertinent part: "If a judgment directs a party to . . . perform any . . . specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person . . . The court may also in proper cases adjudge the party in contempt." Fed. R. Civ. P. 70. Rule 70 provides that "when an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." Fed. R. Civ. P. 71. The All Writs Act, in relevant part, provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "[C]ourts have interpreted [the All Writs Statute] as authorizing injunctions to protect and effectuate their judgments." *In Reliance Securities Litig.*, 2003 WL 1943320 (D. Del. 2003) (citing *Baker v. Gotz*, 415 F. Supp. 1243, 1247 (D. Del. 1976) (collecting cases)).

## III. DISCUSSION

As an initial matter, the court notes that this matter proceeds as a class action. Fatir, proceeds *pro se*. He is not an attorney and may not represent the interests of the class. *See Sinclair v. Citi Mortg., Inc.*, 519 F. App'x 737, 739 (3d Cir. 2013) (unpublished) ("one *pro se* litigant cannot represent another") (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.

---

[4] Warden Pierce advises the court that the original defendants are no longer employed by the DOC. (D.I. 162 n.1.) Defendant John Sullivan retired from the DOC on July 1, 1987 and defendant Walter Redman is deceased. (D.I. 109 n.1)

5

1975) (noting that "it is plain error to permit [a litigant] who is unassisted by counsel to represent his fellow [plaintiffs] in a class action.").

In addition, it is far from clear that Fatir has standing to bring this motion. He was not a named plaintiff in the original action and it is unknown if he met the criteria to be considered a member of the class. Nor was he awarded any injunctive or monetary relief.

Even assuming Fatir does have standing, it is not appropriate to grant his motion. First, Fatir seeks an order for the defendants to cease double-celling. However, on September 22, 1978, the court amended the February 16, 1977 order and permitted the defendants "to house two inmates in cells" in a facility at the DCC. Next, Fatir posits that "after receiving a 90 day stay, defendants conveniently forgot that this court was supposed to make the ultimate decision on enforcement and, instead, acted as if the 90 day stay was a full vacation of the prior order." (D.I. 163.) To the contrary, the matter remained stayed at the request of the Community Legal Aid Society, Inc. ("Community Legal Aid") who, at the time, represented a majority of the class members, and who had initiated the *Dickerson* class action in the Court of Chancery in order to litigate State constitutional issues.[5] (*See* D.I. 150, ex.) In addition, Community Legal Aid did "not consider it advisable at this point to proceed with the pending federal case, *Anderson v. Redman*." (*Id.*) From that point on, the class representatives took no action in the instant case.

Moreover, *Dickerson* resulted in a settlement agreement approved by the Court of Chancery, followed by a finding that the defendants in *Dickerson* were in compliance, and in 1995 the case was dismissed. At no time, did any party to this action advise the court of the resolution of *Dickerson*. Nonetheless, it appears that the resolution of *Dickerson* ended this case. To the extent Fatir believes there is a violation of his constitutional rights, he has the option of

---

[5] The matter was stayed so the parties could litigate all possible bases for a challenge to H.B. 495 under Article I, § 11 of the Delaware Constitution through the Delaware court system.

6

filing a fresh lawsuit reflecting the current conditions at the facility where he is now housed. Accordingly, the court finds that Fatir's grounds for enforcement of the judgment are not supported by the record.

Finally, the case has been stayed for since 1979. Upon review of this matter, the court finds it is appropriate to lift the stay. In addition, until Fatir filed the instant motion, no action had been taken in this matter for approximately thirty years. The court may dismiss an action pursuant to Fed. R. Civ. P. 41(b) based upon its inherent power to manage it docket. *See Parks v. Ingersol-Rand Co.*, 380 F. App'x 190, 195-96 (3d Cir. 2010) (unpublished). Given that the plaintiffs failed to prosecute this case for more than thirty years, that in 1995 the plaintiffs failed to advise the court of the outcome of the *Dickerson* case, that the *Dickerson* case resulted in a settlement agreement approved by the State court that resolved the state issues, and that inmates have available to them the option of initiating litigation for alleged federal constitutional violations, the court finds it appropriate to dismiss the case.

## IV. CONCLUSION

For the above reasons, the court will lift the stay, deny Fatir's motion to enforce the judgment (D.I. 152), and dismiss the case pursuant to Fed. R. Civ. P. 41(b).

An appropriate order will be issued.

_____
UNITED STATES DISTRICT JUDGE

Feb 3, 2015
Wilmington, Delaware

7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| AMIR FATIR, | ) |
|---|---|
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 76-364-GMS |
| WALTER REDMAN, et al., | ) ) ) |
| Defendants. | ) ) |

## ORDER

At Wilmington this 3rd day of Feb, 2015, for the reasons set forth in the memorandum opinion issued this date;

IT IS HEREBY ORDERED that:

1. The stay is **lifted**.

2. Amir Fatir's motion to enforce the judgment (D.I. 152) is **denied**.

3. The case is **dismissed** pursuant to Fed. R. Civ. P. 41(b).

4. The Clerk of Court is directed to **close** the case.

UNITED STATES DISTRICT JUDGE